# FIRST DEPARTMENT.

## GENERAL TERM, MAY, 1875.

---

### PLACE v. GREENMAN.

*Contract — against public policy void.*

Plaintiff was employed by a steamship company to examine a vessel which the company proposed to purchase, to see if it was fitted for the company's purpose. *Held*, that a contract between the owner of the vessel and plaintiff, whereby plaintiff was to receive from such owner $2,000 in case of a sale to the steamship company, was in conflict with plaintiff's duty to the company, and void.

APPEAL by defendant from a judgment in favor of plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the court.

The action was brought by William K. Place against George Greenman, to recover commission on the sale of a ship.

Sufficient facts appear in the opinion.

*Wm. Allen Butler*, for appellant.

*Asbel S. Levy* and *Ira D. Warren*, for respondent.

Present — DAVIS, P. J., BRADY and DANIELS, JJ.

DANIELS, J. The judgment was recovered for the sum of $2,000, besides costs, as the plaintiff's commission on the sale of the steamboat "Anna Maria" by the defendant to the Central American Transit Company, in the fall of 1865. Before the sale was made, the plaintiff examined the steamboat for the purpose of ascertaining her condition, and whether she was suitable for the business of the

Transit Company; and on his report of her fitness the purchase was made. Just before the making of the examination, the plaintiff called at the office of James Murphy & Co. and procured from William P. Buckmaster a letter to the defendant, stating that if parties were produced to purchase the boat the defendant should allow $2,000 out of the price. According to the plaintiff's evidence, this letter, which was dated on the 6th of October, 1865, was taken by him and delivered to the defendant, who promised to pay that sum to him in case the sale was made, as it afterward was, for just what the defendant demanded, the sum of $50,000. The defendant denied the making of the agreement to pay the plaintiff the commission claimed by him. But as the evidence concerning that was conflicting, the question was a proper one for the decision of the jury, and the verdict they rendered settled that fact in the plaintiff's favor.

It was objected upon the trial that the plaintiff, at the time when he was sent to examine the steamboat, and when the letter was procured and delivered, and the report recommending her purchase was made, and the promise of defendant made, and also when the sale took place, was in the employment of the Transit Company, and for that reason could not lawfully agree to receive the commission recovered by the judgment. The evidence did not clearly show whether the sale was consummated and the steamboat delivered in October or November of the year 1865. But it was certainly in one or the other of those months. The plaintiff's evidence was that it was in November, and the circumstances of the verdict being in his favor will require that to be assumed as the truth in the present examination of the case.

He stated that he was the chief engineer of the company from 1850 to the latter part of October, or the 1st of November, 1865, when his employment in that special capacity ended. After that he continued in the employment of the company until after the purchase of the Anna Maria, but not as chief engineer. His services, after he ceased to be chief engineer, were principally performed on and about another steamboat owned by the company, which was finished about the last of November, 1865. But his continued employment was in the engineer's department, and it included the duty to examine machinery and carpenters' work, and pass upon engines and machinery, and other parts of steam vessels. And for the services performed while the employment continued, the plain-

tiff claimed compensation from the company, but no commissions on the sale of the steamboat. And he charged it for his time going on board of her.

He stated that he examined two steamboats for the company, one of the two being the Anna Maria. He was then asked : "Were you in the employ of the Central American Transit Company when both these vessels were bought ? Answer, yes, sir." "And examined both of these vessels ? Answer, yes, sir." The court then asked whether he was in the employ of the company when he bought the Anna Maria ; his answer was, "no, sir," and he added that he remained as a friendly act to go and get this boat. Upon being asked whether he meant to say he was not then in the employ of the company, he answered that he was not as chief engineer, and added, "I do not know what you call employ." He added farther on this subject, "If you call a man going and getting a boat and bringing it down for them, if you call that employment, I was in their employ." He then stated that he examined the steamer and made a report on her to the vice-president of the company, as he told the defendant he would, and that he made the examination and report for the company, and that it was done in connection with the purchase of the steamer. And he further testified that it was in discharge of his duty to examine machinery and carpenters' work, and pass upon engines and machinery, and other parts of steam vessels ; that he made the report in regard to the Anna Maria, and that he was paid by the day after he resigned as chief engineer. This evidence very clearly established the fact that the plaintiff was in the employment of the Transit Company, the purchaser of the steamer, when he examined and reported upon her condition, and recommended her purchase, and when that was afterward made by the company. And it was quite evident that she was bought in consequence of the conclusion produced by his report. That employment, even though it was not in the capacity of chief engineer, was such as to render it his duty to examine into the fitness, and report upon that, as well as the suitableness of the steamer for the company's business. And the duty was assigned to him because of his long experience in that business, and his thorough understanding of what was desired. It required him to perform his duty to the best of his judgment, for the benefit and advantage of the company. And accordingly it incapacitated him from entering into the employment of the seller, in which it would be his duty to

induce a sale on the most advantageous terms for him. The latter employment was incompatible with a fair or faithful discharge of his duties to the company, and by entering into it he subjected himself to the temptation, to impose upon and defraud his first employer. He was entitled only to a fair remuneration for his services from the company, while, if the amount he stipulated should be paid by the defendant can be collected, he would be allowed to subject himself to the direct inducement to increase it, by adding $2,000 to what was probably the fair value of the steamer, for the purpose of being paid to him as a commission. And according to the evidence given by the witness Buckmaster, who was sworn and examined on the plaintiff's behalf, the understanding that this sum should be paid had that effect from the beginning. For when he informed the plaintiff of the dimensions of the defendant's two steamers, the former stated that one of them would suit, before he even saw them, and asked for the letter which was written to the defendant, stating that, if parties were produced to purchase the boat, he should be allowed $2,000 out of the price. The interest of the plaintiff in the sale created in that manner operated as a direct inducement to recommend the purchase of the steamer by the company for $2,000 more than ought to have been required, so that he could receive the amount. It was not for the benefit of the seller, but for that of the plaintiff. When the company was liable to compensate him for all he did in the faithful performance of the same services, the direct effect was to render him unfaithful in that employment; and for that reason, the law will not sanction the arrangement which he made with the defendant, without the knowledge or assent of the company, for the payment of this sum of $2,000. It was a simple contrivance by which the amount was to be taken from the company and paid over to him, for doing what he was bound to do under its employment, and for which he could claim to be reasonably compensated by it. An agreement having such an end in view is void. It is against good morals, and equally so against the policy of the law. Story on Agency (4th ed.), §§ 30, 210, 212; *Watkins* v. *Cousall*, 1 E. D. Smith, 65; *Pugsley* v. *Murray*, 4 id. 245; *Draughon* v. *Quillen*, 23 La. 237; *Morison* v. *Thompson*, 9 Q. B. L. R. 480.

The fact was clearly proved by the evidence in the case that the plaintiff was employed by the company to do all that was required for

the purpose of enabling its officers to decide upon the propriety of the purchase and the amount properly payable for the steamer; and the engagement made with the defendant was entirely inconsistent with the duties arising out of that relation. For all that he was required to do the company was bound to reasonably remunerate him, and he could not assume an attitude, while that employment continued, which would be attended with the effect of diverting him from the protection of the interests it was his duty to promote. And that would be his position, if the contract he claimed he had made with the defendant should be sustained. The motion which was made for a nonsuit should have been allowed to prevail, and the exception to its denial was well taken.

The judgment and order should, therefore, be reversed, and a new trial ordered, with costs to abide the event.

*Judgment reversed and new trial ordered.*